IN THE UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY GERALD WELKER, | ) | CASE NO.  4:23-CV00893-SL |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Plaintiff, Rodney Gerald Welker ("Welker"), challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under XVI of the Social Security Act ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be **AFFIRMED**.

## I.   PROCEDURAL HISTORY

Welker filed an application for SSI on December 3, 2020. (Transcript ("Tr.") at 95) He alleged a disability onset date of August 19, 2020, and claimed disability due to "arthritis, depression, Torn ACL (right), elbow locks up RT, wears special brace on knee, and weakness on right side of body." (Tr. 95-96) His application was denied initially and upon reconsideration, and Welker requested a hearing before an administrative law judge ("ALJ").  (Tr. 125, 137, 139)

On April 14, 2022, ALJ ("ALJ") Susan Smoot held a telephonic hearing on Welker's application. (Tr. 34-64) Welker, represented by counsel, and an impartial vocational expert ("VE")

1

testified. (*Id.*) On June 8, 2022, the ALJ issued a written decision finding Welker was not disabled. (Tr. 12-33) The ALJ's decision became final on March 3, 2023, when the Appeals Council declined further review. (Tr. 1-3).

Welker then filed the instant Complaint challenging the Commissioner's final decision. (Doc. No. 1) The parties have completed briefing in this case. (Doc. Nos. 7, 9, 10) In his brief, Welker puts forth three assignments of error:

> 1. The ALJ erred when she improperly assessed the opinion of the treating source and failed to support her conclusion with substantial evidence.

> 2. The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms, including pain, precluded him from engaging in substantial gainful activity on a full-time and sustained basis.

> 3. The ALJ erred at Steps Four and Five of the Sequential Evaluation in that substantial evidence did not support the RFC finding that Plaintiff only needed an assistive device for ambulating.

(Doc. No. 1 at 1).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Welker was born in 1977 and was 43 years-old on the date his application was filed, making him an "younger individual age 18-44" under the regulations. (Tr. 26) *See* 20 C.F.R. § 416.963. He has at least a high school education. (*Id.*)

### B. Relevant Medical Evidence

#### 1. Mental Health Impairments

Welker received mental health counseling from Travco. (Tr. 647-695, 717-824) Welker reported symptoms of anxiety and depression. (*Id.*) At times Welker exhibited signs of anxiety (*e.g.*, Tr. 670, 683, 687, 810) or depressed mood (*e.g.,* Tr. 732, 744) on examination, otherwise Welker's examinations regularly document no mental, behavioral, or cognitive abnormalities. (*e.g.,* Tr. 655,

2

664, 667, 678-79, 687-88, 692, 717-18, 722, 727, 737, 741-42, 749, 754, 759, 763-64, 768,772, 775-76, 780, 785, 790, 795, 822)

### 2.    Physical Health Impairments

Prior to his August 19, 2020, alleged disability onset date, Welker underwent surgery to his right knee. His October 2019 surgery involved a right knee arthroscopy, ACL reconstruction and hamstring autograft, lateral meniscus repair, partial medial meniscectomy. (Tr. 534-37) He also received a left knee steroid injection at that time. (Tr. 534-537). After that surgery, Welker immediately began physical therapy for weakness in his right lower extremity, decreased range of motion of right knee, gait abnormality, and right ACL tear. (Tr. 336-47; 355-70; 375-438) He continued physical therapy through October 2020, but his therapy ended due to insurance authorization being exhausted (Tr. 335).

A July 2020 MRI of Welker's right knee revealed myxoid degeneration of anterior cruciate ligament, mild irregular free margin radial tearing of the posterior horn of the medial meniscus, tricompartmental degenerative change of the knee, moderate knee joint effusion, and scarring (Tr. 353-354). In August 2020, Welker had further surgery on his right knee, which included arthroscopy, anterior cruciate ligament revision reconstruction, partial lateral meniscectomy, and left knee steroid injection on August 5, 2020 (Tr. 464-468). November 2020 x-rays of Welker's right upper extremity revealed epicondylar spurs and mild acromioclavicular osteoarthritis. (Tr. 316) The lumbar spine was also noted to have moderate facet disease of the lower lumbar spine with moderate spondylosis at the thoracolumbar junction. (Tr. 317)

At a March 26, 2021, examination, Welker reported falls over the previous six months due to his knee. (Tr. 1234) He further reported he needed assistance walking at home and in unfamiliar settings, and used a cane. (*Id.*) Welker met with Dr. J. Martin Leland on April 7, 2021 as he

continued to have pain in his left knee and right shoulder. (Tr. 846-849). He requested and received steroid injections. (Tr. 849) Dr. Leland noted Welker's knee pain was from reinjury after Dr. Leland performed two ALC reconstructions on his knee. (Tr. 846) Dr. Leland stated that he was "recommending physical therapy to work on aggressive strengthening on the right knee and wearing a brace as needed but unfortunately there is nothing further else I can offer this patient." (*Id.*) On examination, Welker had mild effusion of his right knee, but full range of motion in his knee and right shoulder. (Tr. 848) Welker again attended physical therapy for his right knee from April 20, 2021, through June 17, 2021. (Tr. 1456-1509)  On his last therapy visit of the period it was noted that his potential to achieve rehabilitation goals was "excellent." (Tr. 1456) Welker reported no change in pain, but demonstrated improved endurance and gait. (*Id.*)

Dr. Abhishek Ray met with Welker on June 3, 2021, due to complaints of head and neck pain. (Tr. 850) Dr. Ray determined that Welker did not need neurosurgical intervention but could suspected some chronic occipital neuralgia and/or brachial plexopathy (*Id.*) It was noted a recent spinal MRI and CT scan of Welker's head were largely unremarkable. (Tr. 850, 1427) Dr. Karla Madalin examined Welker in August 2021 and diagnosed chronic intractable headache, numbness and tingling of right upper and lower extremity, and bilateral occipital neuralgia. (Tr. 1427-35)

On September 7, 2021, Welker was evaluated by Dr. Christopher Stalling. (Tr. 696-700) Dr. Stalling assessed post traumatic osteoarthritis of the right knee, rupture and impingement syndrome of right shoulder. (Tr. 699). Welker had his knee and shoulder injected with Kenalog. (Tr. 700) Dr. Stalling performed right knee replacement surgery later that month. (Tr. 710-712)

At a post-surgical follow-up, Welker was doing well with his pain controlled. (Tr. 883) On inspection, Welker had non-tender extremities and exhibited normal motor function. (Tr. 885) In November 2021, six weeks post-surgery, it was noted Welker was "having some normal expected

pain" and some muscle weakness, but was "making good progress with physical therapy and has excellent range of motion." (Tr. 831-32) At a December 2021 visit, Welker reported left knee pain. (Tr. 833) He stated that his right knee was experiencing some weakness and pain, but he continued to improve and felt it was much better than prior to surgery. (Tr. 835)

On February 2, 2022, Welker reported continued pain and weakness in his right knee and lower extremity. (Tr. 1261) It was noted that he was ambulating with a cane. (Tr. 1267) On examination Welker had tenderness and pain, but his gait was "grossly nonantalgic" and Welker was able to rise from a seated to standing position without hesitancy, push off, or delay. (*Id.*) It was recommended Welker continue physical therapy. (Tr. 1261) On February 8, 2022, Welker returned to Dr. Stalling complaining of right knee pain, right shoulder pain and a right elbow problem. (Tr. 838) Welker stated that he still experienced some pain, as well as weakness causing his knee to give way during walking. (Tr. 841) Welker also reported continued improvement and noted that he feels "it is much better than it was prior to his surgery." (*Id.*) On examination, Welker had no knee effusion and good range of motion. (Tr. 841) He exhibited some tenderness and it was noted that his right quadricep was significantly weaker than the left. (Tr. 841) An X-ray revealed lateral epicondylitis of the right elbow and right shoulder impingement. (*Id.*) It was recommended Welker begin therapy for his right upper extremity. (Tr. 842) On March 10, 2022, Welker returned to Dr. Madalin complaining of neck pain and headaches. (Tr. 1450) It was noted, a medication dosage increase was helping. (*Id.*)

### C. Opinion Evidence

**Consultative Examination.** On March 12, 2021, Welker underwent a consultative psychological examination, which was conducted by Jennifer Haaga, Psy.D. (Tr. 626-29) Welker reported a depression diagnosis and stated that he was prescribed Trazadone and Wellbutrin (Tr.

628). On examination, Welker was cooperative; his speech and articulation were clear; and his thought processes were logical, organized, coherent, and goal directed. (Tr. 629) He did not exhibit manifestations of anxiety and did not appear to be responding to internal stimuli but reported experiencing hallucinations; anxiety; and obsessive-compulsive tendencies. (Tr. 630) Welker displayed adequate memory, attention, and concentration but reported memory difficulties. (*Id.*)

Dr. Haaga diagnosed Welker with adjustment disorder with mixed anxiety and depressed mood; and substance use disorders in sustained remission. (Tr. 631) Dr. Haaga opined that Welker could comprehend and complete simple, routine tasks, as well as some more complex familiar tasks; she added that he "may have some difficulties with learning new jobs." (Tr. 632). She further opined that he would "likely have difficulties" in maintaining attention, concentration, persistence and pace and would have "some difficulty" with attention and concentration. (*Id.*) Dr. Haaga added that Welker was "likely to become easily frustrated if faced with work pressures." (*Id.*)

**Ronaldo Yolando, D.O.** On December 13, 2021, Ronaldo Yolando, D.O., with Travco, submitted a Mental Impairment Questionnaire on behalf of Welker. (Tr. 826) Dr. Yolando opined that Welker had "limited but satisfactory" capacity in the following areas: carry out very short and simple instructions; work in coordination with or in proximity to others without being distracted by them; remember locations and work-like procedures; understand and remember very short and simple instructions; interact appropriately with the general public; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; set realistic goals or make plan independently of others (Tr. 826, 827).

Dr. Yolando also opined that Welker was seriously limited in the following functional areas: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; manage regular attendance and punctuality; sustain an ordinary routine without special supervision; perform at a consistent pace without an unreasonable number of rest periods; understand and remember detailed instructions; and accept instructions and respond appropriately to criticism from supervisors. (Tr. 826, 827) He further opined that Welker was unable to meet competitive standards in terms of the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and that Welker would be absent from one day each week and would be off task "most of [the] day." (*Id.*)

**Patrick Janovick, M.D.** On January 23, 2022, Dr. Janovick completed a Physical Medical Source Statement on Welker's behalf. (Tr. 1363-66) He listed Welker's diagnosis as "knee pain" (Tr. 1363) He opined that Welker could sit, stand, or walk for about two hours total in an eight-hour workday. (Tr. 1364) He also opined Welker would require breaks every 30 minutes for 10 minutes at a time to walk around and that he would sometimes need unscheduled breaks; need to elevate his legs 75% of the day due to swelling and pain; lift 10 pounds occasionally and less than 10 pounds frequently; be off task 25 percent or more of the day and would miss more than four days of work per month. (Tr. 1364-66) In response to the question asking whether Welker needed a cane or other assistive for walking, standing, or both, Dr. Janovick wrote "cane." (Tr. 1365)

**State Agency Opinions – Physical Health:** On March 8, 2021, at the initial level of review, State agency medical consultant Elizabeth Roseberry, M.D., determined that Welker could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for four hours in a workday, and sit for six hours in a workday. (Tr. 101). Dr. Roseberry further concluded that Welker had additional postural and environmental limitations. (*Id.*) On November 19, 2021, W. Scott Bolz,

M.D., the State agency medical consultant at the reconsideration level of review affirmed Dr. Roseberry's findings (Tr. 113).

**State Agency Opinions – Mental Health:**  On March 26, 2021, Deryck Richardson, Ph.D., the State agency psychological consultant at the initial level of review, found that Welker could perform 3-5 step tasks that do not require a rapid pace and could adapt in settings where changes in job duties were not frequent. (Tr. 103) On November 4, 2021, Karla Delcour, Ph.D., the State agency psychological consultant at the reconsideration level of review, affirmed Dr. Richardson's findings. (Tr. 115)

**D.    Hearing Testimony**

On April 14, 2022, Welker, represented by counsel, appeared for a telephonic hearing before the ALJ. (Tr. 34-64) Welker testified to the following:

- He lives in a house with his girlfriend. He does not drive. He was injured in 2017 when he fell from a ladder. His girlfriend drives him and helps him run errands and get dressed at times. He has a chair for showering. He does not perform chores. When asked what he does in a day he stated, "I pretty much just lay around in pain half the day and then go through like my mental episodes." He does not use the internet, hardly uses his phone, does not see relatives or friends, and has no hobbies. He previously worked as a brick layer.

- He is unable to work due to the use of a cane 70% of the time, difficulty concentrating, and hallucinations. He stated he had hallucinations his whole life, including while working as a brick layer, but they have improved since then with medication. He is still in physical therapy for his right knee and experiences crippling pain. He uses a cane, but no longer wears a knee brace. He does not use the cane much around the house, but uses the cane or an electric cart when running errands. His ability to walk has improved somewhat following his right knee surgery. He started therapy for his shoulder and elbow on the day of the hearing. He had shoulder problems at his prior job, but they are worse now. He also experiences sharp lower back pain that radiates down his leg. Medication provides some relief.

- Upon questioning from his counsel, Welker also testified that he has difficulty with focus and concentration and can barely get out of bed. He elevates his legs for a couple hours a day on an ottoman.

(Tr. 42-57)

8

Vocational Expert ("VE") Lynne Smith also testified at the hearing. (Tr. 57-63) The ALJ posed various hypothetical scenarios to the VE about whether an individual of Welker's age and education could work and, if so, what types of jobs could they perform with the following theoretical limitations:

1. Occasionally lift and carry up to 20 pounds; frequently lift or carry including upward pulling up to 10 pounds; stand or walk with normal breaks for a total of about 4 hours in an 8-hour workday; can sit with normal breaks for about 6 hours in a 9-hour workday. Can frequently push, pull with right upper extremity and occasionally push pull with the right lower extremity; occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds; occasionally balance and frequently stoop; occasionally kneel, crouch, and crawl; avoid moderate exposure to vibration; avoid exposure to dangerous moving machinery and unprotected heights; no commercial driving; perform 3-5 step tasks in an environment free of fast-paced production requirement with infrequent changes in job duties.
   - The VE stated that the hypothetical person could not perform Welker's past work, but could perform work as an order clerk, ticket checker, weight tester. (Tr. 60)

2. The ALJ then adjusted hypothetical #1 so that the person would perform work at the sedentary level of exertion.
   - The VE testified that the jobs remained the same. (Tr. 61)

3. The ALJ then asked what would happen if she added that the individual requires the use of a cane for ambulation.
   - The VE again responded that the jobs remained the same. (Tr. 61)

4. The ALJ then asked what would happen if she added that the individual can frequently handle and finger with the bilateral upper extremities.
   - The VE stated that the ticker checker job would be eliminated, but a charge account clerk job would be added. (Tr. 61)

5. The ALJ then asked what if the individual could frequently reach in all direction with the right upper extremity.
   - The VE stated she would have the same option as stated. (Tr. 62)

The VE also testified that there would be no work if the individual needed to elevate his right lower extremity to waist level when seated during the workday. (Tr. 62) The VE stated that an employer's tolerance for off-task time is no more than 10% and absenteeism is once a month. (*Id.*) After

Welker's counsel asked what would happen to the jobs if an individual required the use of a cane for standing as well as ambulating, the VE responded there would be no jobs. (Tr. 63)

### III.    STANDARD FOR DISABILITY

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. § 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010);  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. § 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. § 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. § 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing his past relevant work, the claimant is not disabled.  20 C.F.R. § 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. § 416.920(g).

### IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant has not engaged in substantial gainful activity since December 3, 2020, the application date (20 CFR 416.971 et seq.).

10

2.      There exists new and material evidence regarding the claimant's functioning when compared to the prior administrative law judge decision. Thus, I do not adopt all of the findings from that decision.

3.      The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the bilateral knees, right ACL tear, right total knee replacement, chronic pain disorder, neuropathic arthritis, right acromioclavicular joint arthritis, right epicondylar spurs, neurocognitive disorder, depression, anxiety (20 CFR 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except with the following additional limitations. The claimant can frequently push and pull with the right upper extremity and can occasionally push and pull with the right lower extremity. The claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. The claimant can frequently stoop, and can occasionally balance, kneel, crouch, and crawl. The claimant requires the use of a cane for ambulation. The claimant can frequently reach in all directions with the right upper extremity. The claimant should avoid moderate exposure to vibration, and must avoid all exposure to dangerous, moving machinery and unprotected heights. The claimant cannot perform any commercial driving. The claimant can perform three to five step tasks in an environment free of fast-paced production requirements and with infrequent changes in job duties.

6.      The claimant is unable to perform any past relevant work (20 CFR 416.965).

7.      The claimant was born on August 2, 1977 and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

8.      The claimant has at least a high school education (20 CFR 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, since December 3, 2020, the date the application was filed (20 CFR 416.920(g)).

(Tr. 18-27)

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v.Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also His v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion

12

reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec*., 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

Welker puts forth three assignments of error in his brief. First, he argues the ALJ "improperly assessed the opinion of the treating source and failed to support her conclusion with

substantial evidence." Second, he argues that the ALJ erred in assessing his subjective symptoms. Third, he argues the ALJ erred in finding Welker only need an assistive device for ambulating.

### A.  Treating Source Opinions

Welker first argues that the ALJ erred in assessing Welker's treating sources Dr. Patrick Janovick and Dr. Ronaldo Yolando. (Doc. No. 7 at 8-16)

### 1.  Legal Standard

For applications filed after March 27, 2017, "an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to a medical opinion." *Heart v. Comm'r of Soc. Sec.*, No. 22-3282, 2022 WL 19334605, at *2 (6th Cir. Dec. 8, 2022); 20 C.F.R. § 416.920c(a) and *Hamade v. Kijakazi*, No. 21-2973, 2022 WL 4487896, at *3 (6th Cir. Aug. 23, 2022). Instead, the ALJ weighs each opinion based on various factors, the most important of which are the opinion's supportability and consistency. See 20 C.F.R. § 416.920c(c); *Hamade,* 2022 WL 4487896, at *3.

### 2.  Analysis

**Patrick Janovick, M.D.**  Dr. Janovick began treating Welker as a primary care physician in March 2021. (Tr. 1234-60) Dr. Janovick completed a physical medical source statement ("MSS") for Welker on January 31, 2022. (Tr. 1363-66) Dr. Janovick listed a diagnosis of "knee pain" and opined that, Welker could sit or stand for 20 minutes each at any one time; sit and stand or walk for up to two hours in a workday; must get up and walk for 10 minutes every 30 minutes; needs to elevate his feet 6-8 inches for 75% of the workday; would be off-task 25% or more of the workday; would be absent from work more than four days a month; would to use a cane 95% of the time due to imbalance and weakness; and had significant limitations in reaching, fingering, and handling. (Tr. 1363-66)

The ALJ found that Dr. Janovick's opinion was only a "little" persuasive because it was "not well supported or consistent with the record." (Tr. 25) Ultimately, the ALJ determined that Welker retained the RFC to perform:

> [S]edentary work as defined in 20 CFR 416.967(a) except with the following additional limitations. The claimant can frequently push and pull with the right upper extremity and can occasionally push and pull with the right lower extremity. The claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. The claimant can frequently stoop, and can occasionally balance, kneel, crouch, and crawl. The claimant requires the use of a cane for ambulation. The claimant can frequently reach in all directions with the right upper extremity. The claimant should avoid moderate exposure to vibration, and must avoid all exposure to dangerous, moving machinery and unprotected heights. The claimant cannot perform any commercial driving. The claimant can perform three to five step tasks in an environment free of fast-paced production requirements and with infrequent changes in job duties .

(Tr. 21)

The Commissioner asserts that the RFC is consistent with Dr. Janovick's opinion "in several important respects." (Doc. No. 9 at 12) For example, the Commissioner notes that the limitation to sedentary work is consistent with some of Dr. Janovick's limitations (i.e., the two hour stand and walk limitations). The Commissioner also points out that, in some areas, the ALJ's RFC is more restrictive. For example, Dr. Janovick found Welker could lift up to 20 pounds at times, consistent with the definition of light work. (Tr. 1365); See 20 C.F.R. § 416.967(b). The ALJ also included postural and environmental limitations not included in Dr. Janovick's opinion. The Commissioner states that the "most significant deviations from the RFC finding were Dr. Janovick's opinions that Plaintiff would need to elevate his legs 75 percent of the day, that he could only sit for two hours a day, and that he would need to take unscheduled breaks and miss work more than four days per month (Tr. 1364-1366)." (Doc. No. 9 at 12)

The Revised Regulations provide that most important factors in weighing an opinion are supportability and consistency. §416.029c(c). Here, the ALJ first states that portions of Dr.

Janovick's opinion were "not well supported." (Tr. 25) The "supportability" factor looks to how well the medical source supports the opinion with objective medical evidence from the record. See 20 C.F.R. § 404.1520c(c)(1). "In other words, the supportability analysis focuses on the physicians' explanations of the opinions." *Lavenia v. Comm'r of Soc. Sec.*, No. 3:21cv674, 2022 WL 2114661, at *2 (N.D. Ohio June 13, 2022) (quoting *Coston v. Comm'r of Soc. Sec.*, No. 20-12060, 2022 WL 989471, at *3 (E.D. Mich. Mar. 31, 2022))

The ALJ did not include in the RFC Dr. Janovick's opinions that Welker (1) would be absent more than four days per month, (2) would be off task 25% of the time or more, (3) could only sit for two hours a day, (4) would need unscheduled breaks, (5) had significant manipulative limitations, and (6) would need to elevate his legs 75 percent of the day.[1] (Tr. 1365-66) As to the first five listed limitations, consistent with the ALJ's finding, Dr. Janovick does not provide any support or explanation for his conclusions in the MSS. (Tr. 1365-66) His only diagnosis is "knee pain." (Tr. 1363) In fact, Dr. Janovick's statement is primarily set out in checkbox format with little supporting narrative.[2] The few explanations that are present are brief and largely illegible. His treatment notes also fail to support the opined limitations. (Tr. 1234-60)

---

[1] Dr. Janovick also opined Welker needed a cane 75% of the time. (Tr. 1365) Cane usage will be discussed in the third assignment of error.

[2] As the Sixth Circuit has found, a check-box form opinion that lacks an accompanying explanation meets the court's patently deficient standard. *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 475 (6th Cir. 2016); *See also Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010*)); accord Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 441 (6th Cir. 2017) (finding that a doctor's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks" was suspect under Hernandez); *Toll v. Comm'r of Soc. Sec.*, No. 1:16cv705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017) (finding that "even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis).

16

As to the fifth limitation, leg elevation, Dr. Janovick states that Welker needs to elevate his legs due to swelling and pain.[3] However, as the ALJ pointed out, the elevation limitation was, "inconsistent with a record that reflects little to no signs of swelling in the lower extremities." (Tr. 25) None of Dr. Janovick's treatment notes contain signs of swelling in the lower extremities or contain a recommendation that Welker should elevate his legs. (Tr. 1234-60). The Sixth Circuit has found it is proper for an ALJ to reject an opinion where the physician's own treatment fail to support the opinion. *See e.g., Hill v. Comm'r of Soc. Sec*., 560 F. App'x 547, 549-550 (6th Cir. 2014) (finding ALJ properly rejected treating physician opinion where that physician's treatment notes "did not support his opinion" that the claimant had severe limitations and, in fact, "undermine[d]" his opinion); *Leeman v. Comm'r of Soc. Sec*., 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."); *Payne v. Comm'r of Soc. Sec*., 402 F. App'x 109, 112 13 (6th Cir. 2010); *See also Clark v. Comm'r of Soc. Sec*., 2020 WL 358716, at *3 (E.D. Mich. Jan. 22, 2020) (upholding ALJ decision to discount leg elevation limitations in medical opinion because the doctor's treatment notes made no mention of a frequent need for leg elevation.).

Welker fails to address the ALJ's supportability justification in his merit brief. (Doc. No. 7) "Lack of supportability alone is a basis for finding a source opinion to be unpersuasive." *Haney v. Comm'r of Soc. Sec.,* No. 5:22-CV-651, 2023 WL 5043248, at *7 (N.D. Ohio June 16, 2023) Based on all of the above, there is substantial evidence to support the ALJ's determination that some of the limitations in Dr. Janovick's opinion lacked support

---

[3] Most of Dr. Janovick's writing is illegible. However, it appears to the Court that Dr. Janovick wrote swelling, pain in this part of the opinion. (Tr. 1363, 1365)

In addition to supportability, the ALJ found Dr. Janovick's opinion was inconsistent with other evidence. The ALJ stated that:

> For example, his statement that the claimant must elevate his legs seventy five percent of any given workday is inconsistent with a record that reflects little to no signs of swelling in the lower extremities.

(Tr. 25) As the ALJ noted, in addition to Dr. Janovick's treatment notes, there was little to no signs of swelling in the lower extremities in any of the other treatment notes. Welker only points to one July 2020 note in his brief listing "moderate volume knee joint effusion." (Doc. No. 7 at 10 citing Tr. 354). Thus, Welker has not shown that the ALJ erred in finding Dr. Janovick's opinion inconsistent with other record evidence showing little signs of swelling.

As a second example, the ALJ stated that Dr. Janovick's opinion was also inconsistent with the sign of improved range of motion, strength, and stability in the right knee after his most recent surgery, on September 22, 2021. (Tr. 25 citing Tr. 831, 836) Welker argues that the ALJ's determination is unsupported because the November and December 2021 treatment notes the ALJ highlighted also contained reports of muscle weakness, pain, gait abnormality and numbness. (Doc. No. 7 at 10). Welker is correct, the November and December 2021 treatment notes (1-2 months after his knee replacement surgery) contained reports of gait abnormality, muscle weakness, and it was noted that he had "some normal expected pain but overall is improving." (Tr. 831-32, 836) However, the November 2021 exam found Welker's right knee was well-healed from the surgery, with no effusion, "excellent range of motion," and good coronal plain stability throughout range of motion. (Tr. 831-32) Similarly, the December 2021 treatment note stated Welker's right knee was well healed, had "excellent range of motion," no instability, 5/5 strength in extension and flexion, and no instability. (Tr. 836) Thus, these treatment notes support the

18

ALJ's determination that Welker showed "improved range of motion, strength, and stability in the right knee." (Tr. 25)

Likewise, Dr. Janovick's manipulative limitations conflict with other evidence. In explaining her determination that Welker retained the RFC to frequently reach, push, and pull with the right upper extremity, the ALJ stated:

> [P]hysical status examinations have shown the claimant to have full range of motion in the right shoulder, along with retained strength levels in the same (e.g., B12F4). Such signs of normal functioning are inconsistent with the claimant's allegations of severe weakness in the right upper extremity causing him to have difficulties handling and manipulating objects with the same.

(Tr. 23)

The ALJ also found that the opinions of the State Agency reviewing physicians were persuasive and conflicted with Dr. Janovick's opinion. (Tr. 24) The ALJ determined that the opinions were "generally consistent" with the record that showed no acute degenerative changes in the lumbar spine, full range of motion in the right shoulder with some regularity, and "excellent" range of motion in the right knee after the September 2021 knee surgery. (*Id.*) Welker asserts that the State Agency physicians did not have the opportunity to review all evidence. (Doc. No. 7 at 12) However, as this Court has recognized, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Jones v. Colvin*, No. 5:13CV1781, 2014 WL 4594812, at *3 (N.D. Ohio Sept. 12, 2014) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)). It is proper for the ALJ to rely on the state agency opinions, as long as subsequent evidence and any relevant changes in the claimant's condition are taken into account. *McGrew v. Comm'r of Soc. Sec.,* 343 F. App'x 26, 32 (6th Cir. 2009). The ALJ did so here.

Rather than identify an error the ALJ made, Welker points to other evidence and argues that it is consistent with Dr. Janovick's opinion. Welker recites large portions of the medical record without connecting it to any argumentation or explanation. For example, Welker states that he had a 2019 knee surgery and attended physical therapy from October 2019-October 2020. (Doc. No. 7 at 10-11) Similarly, although Welker faults the ALJ for relying on the opinions of the March and November 2021 State Agency physician opinions (Tr. 102, 116) because they "did not have the opportunity to review all the evidence," nearly all of the treatment notes Welker highlights regarding his knee occurred prior to the September 2021 surgery. Welker also lists several medical conditions that were not mentioned in Dr. Janovick's report, like migraines and neck pain. (*Id.* at 11) Dr. Janovick only mentioned a diagnosis of "knee pain" and objective signs related to the "right knee" in his MSS. (tr. 1363-66) He does not discuss headaches, neck pain, or other conditions in his opinion. (Tr. 1363-66) Thus, it is unclear how the listed records would demonstrate that the ALJ erred in assessing Dr. Janovick's opinion. "[T]his Court will not formulate arguments on Plaintiff's behalf." *Winegar v. Comm'r of Soc. Sec.,* No. 1:20-CV-608, 2022 WL 475612, at *2 (W.D. Mich. Feb. 16, 2022) "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

Even if Welker had not waived the remainder of his argument, his argument is without merit. Welker's arguments invite this Court to reweigh evidence, which it cannot do. *See Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996); *see also Benjamin C. v. Comm'r of Soc. Sec.,* No. 2:22-CV-3422, 2023 WL 5628180, at *8 (S.D. Ohio Aug. 31, 2023)("[T]o the extent plaintiff references evidence in the record that could be considered consistent with Ms. Paima's opinion or

casts doubt on the ALJ's disability finding, it is not the province of the Court to reweigh the evidence."); *Delbo v. Comm'r of Soc*. Sec., No. 1:21-CV-01522, 2022 WL 2530709, at *13 (N.D. Ohio Jul. 7, 2022) (" The fact that [plaintiff] would weigh the evidence differently or that there is record evidence that may support a more restrictive RFC do not serve as grounds for reversal." ); *Harrod v. Comm'r of Soc. Sec.,* No. 3:17CV1839, 2018 WL 3869897, at *16 (N.D. Ohio Aug. 15, 2018) (" Although Plaintiff clearly believes the ALJ should have assessed more restrictive limitations based on her interpretation of the medical record, that belief does not establish a violation of the substantial evidence standard.") "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001) (citation omitted). Here, the ALJ determined that Dr. Janovick's opinion was unsupported and inconsistent with other record evidence. For the reasons explained, that determination was supported by substantial evidence and Welker has not shown that the ALJ erred in assessing Dr. Janovick's opinion.

### Dr. Ronaldo Yolando.

Welker also argues that the ALJ erred in assessing the December 2021 opinion of Dr. Yolando. Dr. Yolando worked for Travco Behavioral Health where Welker obtained mental health services. In the Mental Impairment Questionnaire ("MIQ") Dr. Yolando opined Welker would be absent from work one day per week. (Tr. 827) He also opined Welker would be seriously limited in his ability to understand and remember detailed instructions and his ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 827) Dr. Yolando further opined that Welker had serious limitations in his ability for sustained concentration and persistence and would be off task most of the day. (Tr. 826-27) The ALJ found "little persuasive effect" in the opinion, explaining as follows:

> Dr. Yolando's opinion is not well supported by citation to specific evidence that informs the conclusions the claimant will be off task and absent from work a significant amount of time. These conclusions are inconsistent with a record that does not document objective instances of the claimant say requiring hospital treatment without warning, for psychological symptoms.

(Tr. 25) As the ALJ stated, Dr. Yolando's opinion lacked narrative support. Dr. Yolando's opinion is a check-box form that contains no explanations.[4] (Tr. 826-27). The ALJ properly considered this factor. *Harrier v. Berryhill*, No. 1:17-CV-01163-JAY, 2019 WL 12758078, at *5 (W.D. Tenn. Mar. 21, 2019) ("A lack of supporting objective evidence is a significant factor that the ALJ may consider when evaluating any medical opinion."); *McLearren v. Astrue*, No. 2:06-0071, 2009 WL 703294, at *10 (M.D. Tenn. Mar. 16, 2009) (found substantial evidence to support discounting opinion, including "lack of objective medical evidence in [provider's] treatment notes to support his conclusion.") Welker also has not disputed the ALJ's determination that he has not been hospitalized for his psychological symptoms.

Welker argues that Dr. Yolando's opinion is supported by treatment notes from Travco. (Doc. No. 7 at 13-14) For example, Welker argues that in therapy sessions he had outbursts or expressions of anger. (*Id.* at 14 citing Tr. 666, 669, 672, 691, 721, 731). However, Welker's citations are to his own self-reports of anger. As the ALJ pointed out:

> While he reports issues controlling his anger, this has not manifested in clearly disruptive behavioral problems. The claimant has been cooperative and polite with nearly every medical provider since the alleged onset date, indicating residual ability to get along with others outside of his home (e.g., B5F4).

---

[4] As noted earlier, the Sixth Circuit has found, a check-box form opinion that lacks an accompanying explanation meets the court's patently deficient standard. *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 475 (6th Cir. 2016); *See also Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010*)); accord Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 441 (6th Cir. 2017) (finding that a doctor's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks" was suspect under Hernandez; *Toll v. Comm'r of Soc. Sec.*, No. 1:16cv705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017) (finding that "even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis).

(Tr. 19-20) As the ALJ notes, mental status examinations (including those from the visits highlighted by Welker) failed to document any objective expressions of anger and regularly noted no mental, behavioral, or cognitive abnormalities. (e.g., Tr. 655, 664, 667, 678-79, 687-88, 692, 717-18, 722, 727, 737, 741-42, 749, 754, 759, 763-64, 768,772, 775-76, 780, 785, 790, 795, 822)

It is proper for an ALJ to reject an opinion where the physician's own treatment fail to support the opinion. *See e.g., Hill,* 560 F. App'x at 549-550 (6th Cir. 2014) (finding ALJ properly rejected treating physician opinion where that physician's treatment notes "did not support his opinion" that the claimant had severe limitations and, in fact, "undermine[d]" his opinion); *Leeman*, 449 F. App'x at 497 ("ALJs may discount treating physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."). Moreover, "Lack of supportability alone is a basis for finding a source opinion to be unpersuasive." *Haney v. Comm'r of Soc. Sec.,* No. 5:22-CV-651, 2023 WL 5043248, at *7 (N.D. Ohio June 16, 2023)

In addition to anger, Welker argues that Travco records show he had difficulty remembering and thinking. (Doc. No. 7 at 14 citing Tr. 666, 691, 721) Though Welker reported difficulty in these areas at times, mental status examinations from these same visits revealed no such difficulties. (See e.g., Tr. 667 [Cognitive functioning…intact]; Tr. 692 ["no serious mental status abnormalities…no signs of cognitive difficulty…memory is intact."]; Tr. 722 [Associations and cognitive functioning "intact"]. The ALJ found that throughout the record, Welker has, displayed little difficulty recalling information and past events; comprehending important medical information; or understanding questions asked of him at various appointments. (Tr. 19) Walker's citations do not show that the ALJ erred in this determination.

23

Welker also argues that Dr. Haaga's conclusions were consistent with Dr. Yolando's opinion. (Doc. No. 7 at 14) Dr. Haaga, the consultative examiner, opined that Welker's mental impairments would pose some difficulty in performing various work-related functions. (Tr. 632) Assuming *arguendo*, that Dr. Haaga's opinion was generally consistent with Dr. Yolando's, the ALJ stated that she only gave "some" persuasive effect to the opinion because it was vague and prefaced with equivocal language like "may" or "likely." (Tr. 24-25) Further, as Welker acknowledges, though he "reported some difficulties with recent memory function" Dr. Haaga noted that he "demonstrated no significant difficulties during the evaluation." (Tr. 23, 630)

Finally, Welker faults the ALJ for relying on the findings of the State agency psychological consultants because they were nontreating sources. (Doc. No. 7 at 14) However, lack of examination or treatment, by itself, is not a reason to discredit the ALJ's assessment of these findings. *Cf. Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").

The ALJ found that Welker's allegations of disabling limitations from his mental impairments were "not fully consistent" with the record evidence. (Tr. 23) The ALJ explained:

> From an overall viewpoint, the claimant has received only conservative treatments for related symptoms. The claimant has attended counseling and received some medicinal treatment for complications of anxiety and depression. He has not required intensive outpatient or inpatient treatments, despite his allegations of poor stress tolerances, and ongoing reports of hallucinations (B5F5). At many counseling appointments, the claimant has not shown any signs of anxiety or depression, though he would report continuing to work on his coping skills for stress (e.g., B9F6). At a consultative examination on March 12, 2021, the claimant was oriented to person, place, and time, presented with good hygiene and dress, and was cooperative and polite towards the examiner (B5F4). The claimant presented with signs consistent with adequate memory and concentration to understand and carry out simple task instructions (B5F4-5). The claimant did not show any signs of psychomotor agitation or other manifestation of anxiety during that appointment (B5F4). He reported positive relationships with his four children, and with his current girlfriend (B5F2). While the claimant has reported ongoing hallucinations and

issues controlling his anger, the record ultimately does not reflect objective evidence of how these symptoms manifest in his daily life. Given the signs of some deficit in motivation and distractibility, I find the claimant can perform three to five step tasks in an environment free of fast-paced production requirements and with infrequent changes in job duties.

(Tr. 23-24)

Though Welker believes some evidence supports Dr. Yolando's opinion, the ALJ's findings should be upheld where there is substantial evidence to support the ALJ's position. *See Delbo*., 2022 WL 2530709 (" The fact that [plaintiff] would weigh the evidence differently or that there is record evidence that may support a more restrictive RFC do not serve as grounds for reversal." ); *Harrod,* 2018 WL 3869897, at *16 (" Although Plaintiff clearly believes the ALJ should have assessed more restrictive limitations based on her interpretation of the medical record, that belief does not establish a violation of the substantial evidence standard." ). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001) (citation omitted). Here, the ALJ found that Welker's conservative treatment and lack of abnormal objective findings undercut his allegations of disabling limitations from his mental impairments and undercut the opinion of Dr. Yolando. There is substantial evidence to support that determination. Welker's argument to the contrary is unconvincing.

### B.  Subjective Symptoms

In his second assignment of error, Welker argues that the ALJ committed reversible error in assessing his subjective complaints. (Doc. No. 7 at 16-19)

#### 1.  Law

Although an ALJ may consider subjective complaints as evidence in support of a disability, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the

credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475–76 (6th Cir.2003). Social Security Ruling 16-3p ("SSR 16-3p") provides that in evaluating the intensity and persistence of symptoms the ALJ should consider evidence including (1) objective medical evidence; (2) the claimant's statements; and (3) medical sources (e.g. diagnoses, opinions, treatment). In addition, the ALJ should also review the following factors:[5]

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* A claimant's statements about the intensity, persistence, and effects of her pain or other symptoms should not be rejected "solely because the available objective medical evidence does not substantiate your statements," however, the objective medical evidence is "one of the many factors [the ALJ] must consider*." Id.*

On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 476 (6th Cir.2003)

---

[5] An "ALJ need not analyze all seven factors" in his credibility determination. *Hatcher v. Berryhill,* Case No. 1:18-cv-1123, 2019 WL 1382288 at *15 (N.D. Ohio March 27, 2019). The ALJ needs only to address "factors pertinent to evidence of record." SSR 13-6p.

(citations omitted). Nevertheless, an ALJ's assessment of a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d 469 at 476.

### 2.  Analysis

Welker argues that remand is required because the ALJ did not comply with SSR 16-3p in assessing his subjective symptoms. (Doc. No. 7 at 18) The ALJ determined that Welker's subjective statements were inconsistent, "because the objective evidence indicates the clamant is capable of greater functioning than alleged." (Tr. 22) Welker argues the ALJ's statement is inaccurate and that the ALJ "failed to account for Plaintiff's pain related to his continuing knee, neck, and right upper extremity problems." (Doc. No. 7 at 17) Welker then goes on to cite his complaints of pain as evidence that he believes contradicted the ALJ's statement:

> [The ALJ's] statement is in error as the medical evidence documented Plaintiff's severe pain (e.g., Tr. 332, surgery at 464-468, pain in leg muscles at 831, weakness and pain at 835, arthritis and back pain and shoulder pain and muscle weakness at 841, left knee and right shoulder at 846, pain in neck radiating to right arm at 850, bilateral knee pain and right shoulder pain at 856, right shoulder and elbow pain at 1239, right knee and both upper extremity pain at 1255.

(*Id.*) Welker also cites his own testimony. (*Id.* at 18)

The ALJ did not ignore evidence of pain as Welker suggests. The ALJ stated that due to his three knee surgeries and cane use, Welker would have a sedentary RFC with additional limitations. However, the ALJ did not fully credit Welker's subjective statements regarding the intensity, persistence, and limiting effects of his symptoms because they were inconsistent with

27

the objective evidence, including signs that Welker's symptoms improved following his knee replacements. Some of that evidence was discussed in the prior section. For example, the ALJ highlighted treatment notes from November and December 2021, noting that shortly after his knee replacement physical examinations found "excellent range of motion," no effusion, no instability, and full strength. (Tr. 831-32, 836) Imaging also failed to support the severity alleged. For example, X-rays of the lumber spine showed no nerve root compression or significant narrowing. (Tr. 23, 317) The ALJ also noted that right shoulder X-rays showed mild osteoarthritis and some spurring, but determined that subsequent physical status exams demonstrate full range of motion and retained strength levels. (Tr. 23, 316, 849) The ALJ also relied on the opinions of state agency physicians which were inconsistent with Welker's allegations. (Tr. 24); 20 C.F.R. § 404.1513a(b)(1) ("Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").

Welker has not addressed the ALJ's explanation and references to objective evidence in the record. As noted, the ALJ's decision provides specific reasons, supported by substantial evidence in the record and using the factors outlined in SSR 16-3p, for not fully crediting Welker's allegations. That evidence includes objective medical tests and examinations, as well as persuasive medical opinion evidence. Since the ALJ's credibility determination is sufficiently articulated and supported by substantial evidence, it will be given great weight. *Workman v. Comm'r of Soc. Sec.*, 105 Fed.Appx. 794, 801 (6th Cir. 2004) ("An ALJ's credibility assessment must be accorded great weight and deference."); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir.2003) (explain that in reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." The Court must

28

defer to an ALJ's findings if they are supported by substantial evidence, even if substantial evidence also supports the opposite conclusion. *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 604-05 (6th Cir. 2009); *see also O'Brien v. Comm'r of Soc. Sec.,* 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (*quoting Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003)) ("the Commissioner's decision still cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ."). As the Sixth Circuit has explained, "an administrative law judge's credibility findings are virtually unchallengeable absent compelling reasons. *Shepard*, 705 Fed. Appx. at 442. Welker presents no such compelling reasons.

### C. Assistive Device

Finally, Welker contends that the ALJ erred in formulating his RFC by not including the use of a cane for standing/balance. (Doc. No. 7 at 20-21) The ALJ determined that Welker retained the RFC for a limited range of sedentary work which included "the use of a cane for ambulation." (Tr. 21) Welker argues that, based on the VE's testimony, there would be no available jobs if the RFC also included a cane for balancing/standing. (*Id.*, citing Tr. 63) He contends that the medical evidence demonstrates his need for a cane to stand/balance. In support, Welker highlights twenty-six treatment notes. (*Id.* citing Tr. 629, 717, 741, 810, 831, 835, 840, 901, 922, 1042, 1077, 1115, 1172, 1180, 1234, 1240, 1274, 1302, 1309, 1311, 1314, 1317, 1321, 1371, 1379, 1485).

Welker's argument is unconvincing because his lengthy list of citations fails to support his claim. (Doc. No. 7 at 21) Not one of the twenty-six treatment notes cited by Welker state he needs a cane for standing/balance. Most cited treatment notes state that Welker needs a cane for

ambulation.[6] The remainder state that Welker is using a cane or list "Assistive device: cane" without further explanation.[7] Thus, these citations do not support Welker's argument.

Welker also asserts that his hearing testimony supports the need for a cane to stand. (Doc. No. 7 at 21) ("This limitation was established in the medical evidence and supported by Plaintiff's testimony.") Welker does not cite to a particular statement or page number in the hearing transcript to support his assertion. Accordingly, that portion of his argument is waived.

Assuming *arguendo*, that the portion of his argument relating to his testimony was not waived, it is unavailing because a claimant's testimony does not qualify as "medical documentation establishing the need" for the cane under SSR 96–9p. *Mitchell v. Comm'r of Soc. Sec.*, No. 13CV01969, 2014 WL 3738270, at *12 (N.D. Ohio July 29, 2014)(finding that the claimant's own testimony and treatment notes by his physician that he used a cane did not qualify as medical documentation establishing the need for a cane under SSR 96-9p); *Smith v. Astrue,* CIV.A. 2:11–0065, 2012 WL 4329007 (M.D.Tenn. July 16, 2012) report and recommendation adopted, 2:11–CV–00065, 2012 WL 4328993 (M.D.Tenn. Sept.20, 2012) (finding that plaintiff's testimony regarding her need for a cane did not count as "medical documentation establishing the need [for the cane], and a description of circumstances of when it is needed.") Thus, even if

---

[6] Tr. 717 (June 2021, "walking with a cane")' Tr. 901 & 1115 (September & November 2021 ambulation device: cane); Tr. 922 (September 2021, "he is using a cane for ambulation assistance."); Tr. 1042 (September 2021, "pt states that he utilizes a cane to assist with mobility."); Tr. 1180 (December 2021 "ambulation device-straight cane); Tr. 1234 & 1240 (December and April 2021, "He needs assistance with CANE- POST KNEE SURGERY. Needs assistance walking In his home. He needs assistance in an unfamiliar setting. The patient is using an assistive device."); Tr. 1274, 1302, 1309, 1311, 1314, 1317, 1321 (visits between December 2020 and December 2021) (ambulates with cane); Tr. 1371 & 1379 (July 2021 and April 2022 "Patient is walking with a cane.")

[7] Tr. 629 (March 2021, "used a cane"); Tr. 741 (July 2021, "using a cane"); Tr. 810 (November 2021: self-reported "using a cane"); Tr. 831 & 835 (November & December 2021 "Assistive device: cane"); Tr. 840 (February 2022, reported by patient "cane"); Tr. 1077 (one day after his September 2021 surgery, Welker reported having a cane at home); Tr. 1248 (August 2021 "cane" listed under current medications); Tr. 1484-85 (May 2021 "uses cane.").

Welker testified that he needs a cane for balancing, his testimony would not establish that the cane is medically required for balance under the regulations. Moreover, Welker has not pointed to any specific testimony in support and there is at least some testimony that contradicts Welker's assertion. For instance, when the ALJ asked Welker, "When do you use a cane versus not using a cane?" Welker replied, "Like in the house. I don't use it much around the house. It's just for short distances."[8] (Tr. 49) For all the reasons stated, Welker's testimony does not support his argument.

As noted, Welker's brief fails to cite to evidence that a cane is medically required for balancing/standing. Accordingly, he has not demonstrated that the ALJ erred. *Bandelow v. Comm'r of Soc. Sec.*, No. 1:22-CV-2245, 2023 WL 6005022, at *8 (N.D. Ohio Aug. 8, 2023) (Finding ALJ did not err by including a cane in the RFC for ambulation, but not balance, because claimant failed to "cite medical evidence saying so" and the evidence cited "shows only that he used a cane while walking."); *Morrison v. Comm'r of Soc. Sec.*, No. 14-10984, 2015 WL 1197689, at *17 (E.D. Mich. Mar. 16, 2015) (upholding ALJ's RFC determination because "plaintiff does not point to any medical evidence indicating that he requires a cane to stand" and all the medical evidence suggests that plaintiff only requires a cane for walking."); *Whitfield v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-11566, 2019 WL 3806893, at *6 (E.D. Mich. July 25,

---

[8] In his reply brief, Welker also adds that Dr. Janovick's opinion supports the need for a cane to stand. Welker states, "Dr. Janovick indicated that Plaintiff needed to use a cane 95% of the time for imbalance and weakness (Tr. 1365)." (Doc. No. 10 at 3) As discussed in a prior section, the ALJ determined that Dr. Janovick's opinion was unsupported and "inconsistent with the sign of improved range of motion, strength, and stability in the right knee after the most recent surgery, on September 22, 2021 (B11F3, 8)." (Tr. 25) That determination is supported by substantial evidence. Further, as the ALJ highlighted, Dr. Janovick's treatment notes on the day he rendered his opinion state that Welker used a cane for ambulation. (Tr. 22 citing 1260). And as the Commissioner notes, Dr. Janovick's answer to the question of whether a cane is needed for standing, walking, or both is unresponsive (i.e., it states "cane.") "It is the ALJ's responsibility to resolve the conflicts in the evidence and incorporate only the credible limitations of record in the RFC finding. See 20 C.F.R. § 416.946(c) (the final responsibility for assessing a claimant's RFC rests with the ALJ)." *Lusher v. Comm'r of Soc. Sec.*, No. 1:17-CV-01947, 2018 WL 3302988, at *15 (N.D. Ohio July 5, 2018) Here, the ALJ explained why she found Dr. Janovick's assessment was not credible and, therefore, she was not required to incorporate those limitations into his RFC determination. (*Id.*)

2019) (determining that the ALJ did not err by finding claimant needed a cane for ambulation, but not standing, because "Plaintiff has not shown that he required a cane to stand within the relevant period."); *McCloud v. Comm'r of Soc. Sec.*, No. 13-14619, 2015 WL 12684332, at *1 (E.D. Mich. Mar. 18, 2015) (upholding ALJ RFC determination that included a cane for ambulation, but not for balance, because substantial evidence supported the ALJ's cane limitation); *See also Clevenger v. Comm'r of Soc. Sec.*, No. 2:19-CV-4512, 2020 WL 2092387, at *9 (S.D. Ohio May 1, 2020) ("Even when canes are used pursuant to a prescription from a doctor, the use of a cane need not be incorporated into the RFC unless the Plaintiff can demonstrate it is medically required."); *White v. Berryhill*, No. 3:16-CV-457, 2018 WL 1516782, at *6 (S.D. Ohio Mar. 28, 2018) (holding a prescription for a cane did not equate with a medical necessity when the prescription did not include why the claimant needed the cane or when to use it); *Salem v. Colvin*, No. 14-CV-11616, 2015 WL 12732456, at *4 (E.D. Mich. Aug. 3, 2015) (Finding ALJ did not err in omitting cane limitation from the RFC because treatment records did not "indicate the circumstances in which Salem might require the use of a cane."). Accordingly, Welker has not demonstrated that the ALJ erred and the RFC limitations with regard to Welker's cane use are supported by substantial evidence.

## VI.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be **AFFIRMED**.


Date:  November 16, 2023                            _s/ Jonathan Greenberg_
                                                                 Jonathan D. Greenberg
                                                                 United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**